UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALBERTO SARABIA-SANCHEZ,<br>Petitioner,<br>v.<br>WARDEN FACILITY ADMINISTRATOR OF NORTHWEST PROCESSING CENTER,<br>Respondent. | CASE NO. 2:26-cv-02646-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Alberto Sarabia-Sanchez's Petition for Writ of Habeas Corpus. Dkt. No. 1. Respondent is Bruce Scott, the Warden of the Northwest ICE Processing Center ("NWIPC").[1] Having considered the petition, the Government's return (Dkt.

[1] Respondent Bruce Scott has not appeared in this matter, so the United States of America has filed a return memorandum as an "Interested Non-Party," which it says "refers to the United States of America on behalf of U.S. Immigration and Customs Enforcement Acting Seattle Field Office Director Julio Hernandez; U.S. Department of Homeland Security ('DHS') Secretary Markwayne Mullin; DHS; and Acting U.S. Attorney General Todd Blanche." Dkt. No. 7 at 1 n.1. "The Warden of Northwest ICE Processing Center, presently Bruce Scott, is not represented by

No. 7), and Petitioner's traverse (Dkt. No. 10), the Court GRANTS the habeas petition and ORDERS Petitioner's release.

## I. BACKGROUND

Petitioner, proceeding pro se, is a noncitizen detained at the NWIPC who challenges the legality of his detention and seeks a writ of habeas corpus. *See generally* Dkt. No. 1. Petitioner is a native and citizen of Mexico. Dkt. No. 9-1 (Form I-213) at 2. On January 29 and January 31, 2007, Petitioner encountered immigration officers near Yuma, Arizona, after Petitioner entered the United States without inspection. On both dates, Petitioner was granted a voluntary return to Mexico. *Id*. at 4. Petitioner subsequently re-entered the United States and has lived here since April 1, 2007. Dkt. No. 1 at 10 ¶ 15. Since Petitioner's entry in 2007, he has remained and developed a life in the United States. He has maintained employment, he has married, and he now has four United States citizen children—all of whom rely on him financially. Dkt. No. 1 at 9 ¶ 13, 10 ¶ 15. Petitioner has no criminal history. Dkt. No. 9-1 (Form I-213) at 4.

On January 18, 2026, in Westminster, California, officers with Immigration and Customs Enforcement ("ICE") encountered Petitioner standing outside and approached him. *Id*. at 3. After Petitioner provided his name and California driver's license, ICE officers ran a search of Petitioner and found Petitioner's two voluntary returns from 2007. *Id*. at 3–4. The officers mentioned the voluntary returns to Petitioner, and Petitioner ran away from the officers. *Id*. Officers caught up to Petitioner, detained him, and "transported [Petitioner] to the Santa Ana Federal Building to be booked in and processed." *Id*. at 4.

On January 18, 2026, a Notice to Appear ("NTA") was issued charging Petitioner with inadmissibility to the United States pursuant to section 212(a)(6)(A)(i) of the Immigration and

the U.S. Attorney's Office." *Id.* When used in this Order, "Government" will refer to the United States of America as the Interested Non-Party.

Nationality Act ("INA" or "Act"), in that Petitioner is a noncitizen "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 9-3 (NTA) at 5; *accord id.* at 2. Petitioner was also charged with inadmissibility to the United States pursuant to section 212(a)(7)(A)(i)(I) of the INA "as an immigrant who, at the time of application for admission, [wa]s not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations" implementing the INA. *Id*. at 5; *accord id.* at 2. On January 24, 2026, Petitioner was transferred to the NWIPC. Dkt. No. 8 (Arambula Decl.)[2] ¶ 11.

While in detention, Petitioner filed a petition for bond and a hearing was scheduled for March 4, 2026. Dkt. No. 9-4 (IJ Bond Order). The immigration judge ("IJ"), John Odell, denied Petitioner's bond request, checking the box labeled "flight risk." *Id*. at 2. No other reason was provided for the bond denial, and the IJ did not make a finding that he lacked jurisdiction. *Id*. at 2–3. On March 20, 2026, Petitioner filed an appeal of the bond denial to the Board of Immigration Appeals ("BIA"). Dkt. No. 1 at 12 ¶ 20. On March 24, 2026, the IJ issued a bond memorandum, finding that "[Petitioner] is subject to mandatory detention under INA section 235(b)(2)(A). See Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025)." Dkt. No. 9-5 (IJ Bond Memorandum). The IJ found he did not have jurisdiction because "At the time of [Petitioner]'s bond hearing, Matter of Yajure-Hurtado was vacated by the U.S. District Court for

---

[2] Some of the facts recounted in this Order are based on the declaration of Deportation Officer Gabriel Arambula (who does not claim to have firsthand personal knowledge of most of the facts he reports (*see* Dkt. No. 8 ¶ 2)), or on hearsay contained within narrative portions of documents in Petitioner's immigration record. The Court makes no findings as to whether these are true and correct statements of fact but does note that they appear to be uncontested by the Parties.

the Central District of California. However, subsequent to [Petitioner]'s bond hearing, on March 6, 2026, the Ninth Circuit Court of Appeals stayed the vacatur." *Id*. Additionally, the IJ found that even if he had jurisdiction, he would find that Petitioner was a flight risk. *Id*. The IJ's bond memorandum offered no insight as to what evidence he heard, what evidence he considered, or what kind of analysis he conducted to reach his flight risk finding. *Id*. On April 8, 2026, Petitioner had a final immigration hearing and the IJ ordered Petitioner removed to Mexico. Dkt. No. 9-6 (IJ Removal Order) at 2. Petitioner appealed the removal order to the BIA on April 22, 2026. Dkt. No. 1 at 12. The appeal remains pending. *Id*.

Petitioner filed the instant petition on July 27, 2026. The matter is fully briefed and ripe for the Court's review.

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. Discussion

### A. Jurisdiction

In general, the Court does not have jurisdiction to review discretionary bond decisions. Specifically, 8 U.S.C. § 1226(e) states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." However, Section 1226(e) does not "preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Hernandez v.*

*Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). As such, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1078 (W.D. Wash. 2026) (alteration in original) (quoting *Kharis v. Sessions*, Case No. C18-4800, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018) (collecting cases)); *see also Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *5 (W.D. Wash. May 7, 2026) ("Claims of constitutional injury, such as procedural due process violations[,] are . . . reviewable by a district court.").

A habeas court's review of an IJ's bond determination is for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "Under an abuse of discretion standard, '[a reviewing court] cannot reweigh evidence but can only determine whether the BIA applied the correct legal standard.'" *Id.* at 785 (citation modified) (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

Petitioner argues that the IJ abused his discretion when he denied Petitioner bond because the IJ "completely disregard[ed] the abundant evidence presented." Dkt. No. 1 at 11 ¶ 19; *see also id*. at 13–14 ¶ 26. Therefore, Petitioner's claims fall squarely within the Court's jurisdiction because he challenges the legality of his immigration bond proceeding and the resulting detention. *See Loya Medina*, 2026 WL 1260848, at *5.

**B. Petitioner Is Detained Under 8 U.S.C. § 1226(a)**

In the IJ's bond memorandum, he made a new finding that he did not have jurisdiction because Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2). Dkt. No. 9-5. Petitioner argues that he is detained pursuant to Section 1226(a) (Dkt. No. 1 at 5 ¶ 4), and the Government agrees, pursuant to Ninth Circuit case law (decided after the IJ issued the bond memorandum), that a noncitizen apprehended in the interior of the United States is subject to Section 1226 (Dkt. No. 7

at 5–6 (citing *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *10 (9th Cir. July 30, 2026)). In accordance with current Ninth Circuit precedent, the Court finds that the statute governing Petitioner's detention is 8 U.S.C. § 1226(a).

**C. Administrative Exhaustion**

The Ninth Circuit has required, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional . . . ." *Hernandez*, 872 F.3d at 988. Courts in the Ninth Circuit consider the *Puga* factors when determining if prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors establish that administrative exhaustion is required, a court may waive the exhaustion requirement if a petitioner demonstrates one of the following *Laing* factors apply, which include: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

In the instant matter, Petitioner argues that the Court should waive administrative exhaustion because: (1) his appeal would be futile; (2) he would face irreparable harm during the

appeal process, as his medical issues (skin sores) would remain untreated, and his four daughters would continue to be without their father, who is the economic backbone of the household; and (3) his claims of violations of the Fourth and Fifth amendment belong exclusively in front of the federal judiciary, not the BIA. Dkt. No. 1 at 9. The Government argues that Petitioner's claims of irreparable injury "do not excuse exhaustion when administrative appeals are already pending and the ordinary process for review of the bond and removal decisions is underway." Dkt. No. 7 at 18. The Government's argument is unavailing. Should Petitioner be forced to wait out his BIA appeal before proceeding with his habeas petition, he likely faces many more months in detention. *See Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1100 (W.D. Wash. 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024 when exhausting an administrative appeal required more than six months). Requiring exhaustion will therefore result in irreparable injury, because Petitioner will remain in detention during this extended period, unable to work and make a living, while his wife and four children remain in the community without Petitioner's financial and emotional support. Dkt. No. 1 at 28 (Sarabia-Sanchez Decl.) (stating that he is the sole financial provider for his family and his absence "plac[es] housing, rent, food sustenance, and basic needs of [Petitioner's] daughters at immediate risk"); *see, e.g.*, *Loya Medina,* 2026 WL 1260848, at *6 (waiving prudential exhaustion requirement due to irreparable injury in part because "Petitioner's continued detention while awaiting agency review of her claims disrupts her ability to provide financial support and maintain the stability of her household, including care for her husband and children"); *Vasquez Lopez,* 830 F. Supp. 3d at 1101 (waiving prudential exhaustion requirement due to irreparable injury for "health and family care reasons"); *Soriano,* 830 F. Supp. at 1079 (waiving prudential exhaustion requirement due to irreparable injury because "Petitioner has dependents who rely on him financially and emotionally, and that relationship is

severely negatively impacted by his continued detention."). Because the Court is convinced by Petitioner's irreparable injury argument, it need not address Petitioner's remaining arguments. Therefore, Petitioner has met his burden of demonstrating that irreparable injury will result if he were required to go through the BIA appeals process.

**D. Merits of the Claim**

When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs nine factors, pursuant to BIA precedent. *See Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez*, 124 F.4th at 783. "These factors may include any or all of the following":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Guerra*, 24 I. & N. Dec. at 40. "Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez v. Hernandez*, No. C26-966, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

Petitioner argues that the IJ unlawfully shifted the burden to him at his bond hearing to show he was not a flight risk or a danger to the community. Dkt. No. 1 at 15 ¶ 30. The Government argues the burden of proof is on the noncitizen at bond hearings under 8 U.S.C. § 1226(a). Dkt. No. 7 at 12 (citing *Guerra*, 24 I. & N. Dec. at 3). The IJ's bond memorandum reflects that he put the burden on Petitioner at the hearing. *See* Dkt. No. 9-5 at 2 ("[Petitioner]

has failed to show that he is not flight risk.”). Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of the evidence at a bond hearing, the Court finds that the IJ abused his discretion in this case.

In the instant matter, both the IJ’s bond order (Dkt. No. 9-4) and bond memorandum (Dkt. No. 9-5) are completely devoid of any reference to the *Guerra* factors, as well as any indication of any alternative legal analysis or evaluation of evidence by the IJ. Petitioner argues that because the IJ “completely disregard[ed] the abundant evidence presented” and therefore abused his discretion. Dkt. No. 1 at 11 ¶ 19. The Government does not address whether the IJ abused his discretion by not considering the evidence Petitioner presented. *See generally* Dkt. No. 7.

The bond order reflects that the IJ checked the box that indicated he believed Petitioner was a flight risk, but it does not provide any additional information as to why the IJ made that finding. *See* Dkt. No. 9-4 at 2–3. As for the bond memorandum, the IJ provided a completely new basis for denying bond (lack of jurisdiction/mandatory detention under Section 1225), but the Parties agree that this new finding is incorrect under the Ninth Circuit’s intervening decision in *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424. The only remaining statement in the memorandum is that the IJ would also “deny [Petitioner]’s request for bond because [Petitioner] has failed to show that he is not flight risk” (Dkt. No. 9-5 at 2), but the memorandum offers no insight as to *why* this determination was made. Seemingly aware of the absence of analysis, the Government attempts to provide information about what the IJ considered at the bond hearing. The Government asserts that “[a]t the hearing, the IJ heard evidence that Petitioner was working in the United States without authorization, that Petitioner used a false social security number, that Petitioner fled from immigration officers on January 18, 2026, and that Petitioner had never sought to obtain legal status in the United States.” Dkt. No. 8

¶ 14. The Government argues, without evidence, that the IJ's decision was "based on these factors" and that the flight risk finding is "supported by the record." Dkt. No. 7 at 10–11. But the problem with the Government's argument is the IJ *did not make a record* as to what he considered (*see* Dkt. No. 9-4; Dkt. No. 9-5), and the Government does not provide the Court with what its representative at the bond hearing submitted to the IJ as evidence. Even accepting these reasons, it is hard to see how Petitioner allegedly using a false social security number to pay taxes demonstrates a likelihood of flight rather than the opposite—that Petitioner was trying to make a living in the United States. And inferring flight risk from a single reported incident of "trying to flee Border Patrol and not having . . . applied . . . for any immigration benefit until recently," without considering a noncitizen's presentation of abundant evidence that they are not a flight risk, has been held to not be a meaningful application of the *Guerra* standard. *Corona-Saldana v. Scott*, No. C26-1347, 2026 WL 1533019, at *5 (W.D. Wash. June 1, 2026) (citation modified).

On the other hand, Petitioner provides to the Court a copy of his Motion for Bond Redetermination submitted to the IJ in advance of his bond hearing (Dkt. No. 1 at 154), as well as the exhibits provided along with the motion (*id*. at 167–320). Petitioner's evidence shows that he presented to the IJ: (1) proof of nearly 19 years of continuous residence in the United States (*see id*. at 242–281 (tax documents)); (2) proof of a fixed and verifiable address (*see id*.); (3) proof of familial ties in the United States, including documentation of his marriage (*see id*. at 219–22 (marriage certificate)) and four U.S. citizen daughters (*see id*. at 183–189 (birth certificates)); (4) proof that he has maintained consistent employment (*see id*. at 242–281) and that his family relies on his financial support; and (5) a pending application for Cancellation of Removal, with proof of payment (*see id*. at 171–74). Nowhere in either the bond order or the bond memorandum is any of this evidence mentioned. *See* Dkt. Nos. 9-4, 9-5. Neither are the

*Guerra* factors mentioned, or any other legal authority the IJ relied on to reach the flight risk finding. *Id*. Courts in this District have consistently found that bond denial memoranda including similarly thin reasoning evidence an abuse of discretion and a violation of due process. *See, e.g., Garcia v. Scott*, No. C26-2434, Dkt. No. 13 at 11–13 (W.D. Wash. Sept. 14, 2026) (finding that IJ abused discretion and violated due process in denying bond where IJ's bond memorandum stated flight risk finding "without *any* reasoning whatsoever" and did not mention *Guerra* factors or discuss petitioner's extensive evidence); *Cardoza-Garcia v. Hernandez*, No. C26-2573, 2026 WL 2294541, at *5 (W.D. Wash. Aug. 10, 2026) (same where bond memorandum did not mention *Guerra* factors or "meaningfully engage with Petitioner's evidence"); *Avila Garcia v. Scott et al.*, No. C26-2307, Dkt. No. 9 at 8–9 (W.D. Wash. July 23, 2026) (ordering release when "the IJ failed to provide any rationale for his alternative finding of flight risk and failed to engage whatsoever with the factors weighing for or against such a finding"); *Carmona Perez v. Hernandez*, No. C26-1368, Dkt. No. 17 at 9–10 (W.D. Wash. June 15, 2026) (same). For all these reasons, the Court finds that the IJ abused his discretion in denying Petitioner release on bond, thereby denying Petitioner due process and violating Petitioner's Fifth Amendment rights.

**E. Appropriate Remedy**

District courts have "a fair amount of flexibility" in fashioning specific habeas relief. In line with other courts in this District, and given the Court finds Petitioner's bond hearing was legally and constitutionally inadequate, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, 830 F. Supp. at 1081; *see also Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *10 (W.D. Wash. May 11, 2026) (finding IJ abused discretion in denying bond and ordering immediate release); *Loya Medina*, 2026 WL 1260848, at *8–9

(same); *Vasquez Lopez,* 830 F. Supp. 3d at 1103 (same). Accordingly, the Court orders Petitioner's immediate release.

* * *

Because the Court grants Petitioner's request for release, it need not address Petitioner's arguments regarding his Fourth Amendment claims related to his arrest; his claims that the IJ's order was a violation of the Administrative Procedure Act; or that his detention is prolonged.

**F. Request for Fees Under Equal Access to Justice Act ("EAJA")**

Petitioner requests an award of fees under the EAJA. Dkt. No. 1 at 17. But such an award is barred for pro se litigants. *See Bollefer v. Comm'r. of Social Security*, No. C21-1605, 2021 WL 8419419, at *1 (W.D. Wash. Dec. 6, 2021) (first citing *U.S. S.E.C. v. Chapman*, 602 Fed. App'x 407 (9th Cir. 2015) (denying *pro se* litigant attorney fees under EAJA); and then citing *Elwood v. Drescher*, 456 F.3d 943, 947 (9th Cir. 2006) ("*Kay* imposes a general rule that pro se litigants, attorneys or not, cannot recover statutory attorneys' fees."); and then citing *Kay v. Ehrler*, 499 U.S. 432, 438 (1991)) (finding that pro se litigant may not seek fees under EAJA). Therefore, the Court denies Petitioner's request.

## IV. CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED. It is hereby ORDERED:

(1) Respondent, the Government, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

(b) SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that

Petitioner has been released from custody and informing the Court of the date and time of his release.

(2) Petitioner's request for fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 is DENIED.

Dated this 22nd day of September, 2026.



Tana Lin
United States District Judge